## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

```
-----------------------------------------------------------------
                                        :
Sucesión Simon Diaz Marquez,            :
                                        :
        Plaintiff,                      :
                                        :       Civil Case No. _____
            v.                          :
                                        :       JURY TRIAL DEMANDED
Miami Fine Foods, LLC and Avi Assor,    :
                                        :
        Defendants.                     :
                                        :
-----------------------------------------------------------------
```

## COMPLAINT

Plaintiff, Sucesión Simon Diaz Marquez ("Plaintiff"), by its undersigned attorneys, for its Complaint against Miami Fine Foods, LLC ("Miami Fine Foods") and Avi Assor (collectively, the "Defendants"), for false suggestion of a connection, false association, deceptive and unfair trade practices, fraud, violations of the right of publicity, unfair competition, trademark infringement, and trademark dilution, herein alleges as follows:

## NATURE OF THE ACTION

1.      Simón Díaz Márquez (performing under the stage name "Tío Simón"), is the most famous artist in the popular folk musical history of Venezuela, recording over 70 records and performing in theater, motion pictures and on television. In recognition of his many achievements, Tío Simón has won numerous awards, including a Lifetime Achievement Award from the Latin Grammy Awards.

2.      Due to his extraordinary success and career, Tío Simón has become a global icon for Venezuelan culture and music.

3.      Tío Simón is well known for his campaigns aimed to instill Venezuelans and people of Venezuelan decent with a sense of pride and excitement to be a part of Venezuela's rich cultural

1

heritage. Tío Simón also starred on an educational children's program called Answers by Tío Simón, in which he taught children the value and richness of Venezuelan culture and music.

4.      Tío Simón passed away in 2014 but continues to be a source of enthusiasm and inspiration throughout the world and the United States, especially in the State of Florida where there is a large Venezuelan community.

5.      The TIO SIMON mark has been in use for over 40 years to identify Tío Simón, his many works, and his contributions to Venezuelan culture and music. The TIO SIMON mark is now owned by Tío Simón's estate, Plaintiff, Sucesión Simon Diaz Marquez.

6.      Plaintiff brings this civil action against Defendants for common law trademark infringement, infringement of unregistered marks under § 43(a)(1)(A) of the Lanham Act, false suggestion of a connection under 15 U.S.C. § 1052, false association under 15 U.S.C. § 1125(a), violations of Florida Deceptive and Unfair Trade Practices Act under Fla. Stat. Ann. § 501.201, *et seq*., fraud, violations of the right of publicity under Fla. Stat. Ann. § 540.08 and Florida common law, unfair competition under 15 U.S.C. § 1125(a) and Florida common law, trademark dilution under 15 U.S.C. § 1125(c) and Fla. Stat. Ann. § 495.151, and Lanham Act false endorsement.

## THE PARTIES

7.      Sucesión Simon Diaz Marquez is the estate of Simón Díaz Marquez, commonly known as Tío Simón, with an address of Calle Ruta G Qta Bettsimar. Urb., Los Campitos, Caracas, Miranda Venezuela 1080.

8.      On information and belief, Miami Fine Foods is a limited liability company organized under the laws of the state of Florida, and is transacting business in the state of Florida, with its principal place of business located at 2635 NE 188 Street Bay, #108, North Miami Beach, Florida 33180.

9.     Upon information and belief, Defendant, Avi Assor, is a resident of Florida and maintains a place of business at 2635 NE 188 Street Bay, #108, North Miami Beach, Florida 33180.

10.     Upon information and belief, Miami Fine Foods is owned and/or controlled by the defendant Avi Assor, who is personally liable and responsible for all the wrongful acts of the defendants for any of the following reasons:

a) Upon information and belief, Avi Assor has personally and directly participated in all of the wrongful acts hereinafter set forth;

b) Upon information and belief, Avi Assor has personally and actively directed the activities of Miami Fine Foods and has personally directed other employees or agents of Miami Fine Foods and/or their own employees and agents to commit the wrongful acts hereinafter set forth;

c) Upon information and belief, Avi Assor has personally and directly controlled the operation of Miami Fine Foods as an instrument to carry out wrongful acts as hereinafter set forth;

d) Upon information and belief, Avi Assor, as an officer of Miami Fine Foods, is the dominant force behind the management and operation of Miami Fine Foods and has personally guided Miami Fine Foods in the wrongful acts hereinafter set forth;

e) Upon information and belief, Avi Assor has personally and individually transacted business in the name of Miami Fine Foods;

f) Upon information and belief, Avi Assor has been aware of the rights of Plaintiff but, notwithstanding such knowledge, has individually and through Miami Fine Foods, committed the wrongful acts hereinafter set forth; and

3

g) Upon information and belief, Avi Assor has actively and personally committed the wrongful acts hereinafter mentioned.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367(a). This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

12.     On information and belief, Defendants are located in Florida and regularly transact business in Florida. On information and belief, Defendants' tortious acts that are the subject of the present suit have been, and continue to be, committed in Florida. Accordingly, this Court has personal jurisdiction.

13.     Venue is proper under 28 U.S.C. § 1391(b) and (c).

## FACTS COMMON TO ALL COUNTS

### A.     Background and Fame of Tío Simón

14.     Tío Simón, born Simón Díaz Márquez, is the most famous and important artist and icon in the popular folk musical history of Venezuela. His fame has spread to the United States and worldwide, recording over 70 records and performing in theaters, motion pictures, and on television.

15.     Tío Simón gained popularity in the early 1960's and has since become an icon representing the highest values of Venezuelan culture.

16.     In 1978, Tío Simón starred in a campaign where he traveled through Venezuela accompanied by a child, who would ask him about the history and culture of Venezuela. Tío Simón would respond by teaching the boy Venezuelan songs, engendering within him pride and excitement to be Venezuelan.

17. Continuing on the success of this campaign, for over a decade, Tío Simón starred on an educational children's program called Answers by Tío Simón, in which he taught children the value and richness of Venezuelan culture and music.

18. Tío Simón is popularly pictured and portrayed wearing a traditional Venezuelan hat and riding on a donkey or on a horse.

19. Tío Simón's image is famous and has inspired countless Venezuelans and others to connect with or learn about Venezuelan culture.

20. Tío Simón has also endorsed and/or licensed the TIO SIMON mark in connection with a number of products and services, including board games, song books and coffee.

21. Venezuelan artists and other creators from all over the world have dedicated songs, paintings, sculptures and performances to Tío Simón, cementing Tío Simón as an icon of Venezuelan culture.

22. In recognition of his many achievements, Tío Simón was awarded a Lifetime Achievement Award from the Latin Grammy Awards in 2008, given nine honorary doctorate degrees by major Venezuelan universities, awarded the Venezuelan National Music Award, given the Proclamation and Key of the City of Doral, Florida in 2009, and given The Great Ribbon of the Liberator's Order, the highest recognition conferred by Venezuela.

23. Tío Simón passed away in 2014 but continues to be a source of enthusiasm and inspiration throughout the world and the United States, especially in the State of Florida where there is a large Venezuelan community.

24. Tío Simón continues to be extraordinarily well-known in Venezuelan communities in the United States where he is a household name.

25.     Tío Simón also regularly performed his music in the United States, including at famed concert halls, such as Carnegie Hall.

26.     For decades, Tío Simón has been an icon of Venezuelan culture and a sentimental banner for the Venezuelan diaspora.

27.     Plaintiff is the successor to the rights of publicity and persona of Tío Simón and the TIO SIMON mark.

28.     In light of Tío Simón's fame in the United States and internationally, consumers in the United States and globally have come to recognize that the TIO SIMON mark points uniquely and unmistakably to Tío Simón and Plaintiff.

29.     Indeed, Tío Simón's music, and other products, were offered in the United States, in connection with Plaintiff's TIO SIMON mark, since well prior to Defendants' adoption of the identical phrase Tio Simon.

30.     Plaintiff's TIO SIMON mark was also licensed in connection with a variety of goods and services, including board games, song books and coffee.

31.     Accordingly, since well before Defendants' adoption of the identical phrase Tio Simon, consumers have associated a wide variety of goods and services as originating from Plaintiff and Plaintiff's TIO SIMON mark.

**B.      Defendants' Confusingly Similar Mark and Goods**

32.     On September 16, 2021, Miami Fine Foods filed Application Serial No. 97/030,729 for Tio Simon (the "Infringing Mark"), in international classes 29 and 30 as follows:

**Class 29**: *Cheese; Ready-to-eat meals comprised primarily of meats, cheese and also including Latin and Venezuelan food, namely, cheese tequenos, nata, milk cream, cachapas, sweet corn-based foods, bollitos, empanadas, cachitos, and pandebono.*

6

**Class 30:** *Sauces; Bakery desserts; Sauces, namely, green sauce, guascaca sauce, pink sauce and garlic and cilantro sauce.*

33.     Defendants have no connection to Plaintiff or Tío Simón and neither Plaintiff nor Tío Simón ever endorsed or consented to Defendants' use or registration of the TIO SIMON mark.

34.     Upon information and belief, Defendants were well aware of Tío Simón, and Miami Fine Foods intentionally filed Application Serial No. 97/030,729 in an attempt to falsely suggest a connection to the public between itself and Tío Simón.

35.     Indeed, Defendants were well aware of Plaintiff's prior rights due to the fame and popularity of Tío Simón and the TIO SIMON mark.

36.     Further, upon information and belief, the President of Miami Fine Foods, Avi Assor, was well aware of Opposer's TIO SIMON mark in that he is a Venezuelan national who grew up in Venezuela, where Tío Simón is a household name.

37.     Moreover, Plaintiff's TIO SIMON mark was famous well before Defendants' first use of the Infringing Mark.

38.     Defendants intentionally filed Application Serial No. 97/030,729 as a part of a scheme to illicitly benefit from the reputation and goodwill of Tío Simón, his estate, and Plaintiff's TIO SIMON mark.

39.     Indeed, the Infringing Mark is identical in appearance, sound, connotation, and commercial impression to the name Tío Simón and Plaintiff's TIO SIMON mark.

40.     Defendants are further taking actions that are deliberately aimed at passing off its goods as those of Plaintiff by misrepresenting that Tío Simón and his estate are the source of, or otherwise endorsing, Defendants' goods.

41.     For example, Defendants actively promote the Subject Mark as being associated with Tío Simón and Plaintiff's TIO SIMON mark.

42.     The goods of Application Serial No. 97/030,729 include traditional Venezuelan food and recipes which consumers instantly recognize as originating from Venezuelan culture, of which, Tío Simón stands as a cultural icon.

43.     Defendants' intentionally chose to adopt "Tio Simon" in connection with traditional Venezuelan food and recipes precisely because of Tío Simón's reputation as a Venezuelan cultural icon.

44.     Defendants' website, https://www.tiosimonfoods.com/, also advertises goods sold under the Infringing Mark as being traditional Venezuelan foods. For example, Defendants' website invites consumers to purchase "irresistible products ready to share and enjoy the Venezuelan tradition."

45.     Moreover, Defendants also use, as its logo, a drawing of a man riding a donkey and wearing a traditional Venezuelan hat. *See* https://www.tiosimonfoods.com/, and as circled below:



46.     This logo is confusingly similar with the well-known representation of Tío Simón within the Venezuelan community, who is commonly portrayed wearing a traditional Venezuelan hat and riding a donkey.



47.     Such marketing under the Infringing Mark is intended to falsely misrepresent a connection between the Infringing Mark and Tío Simón, and misrepresent that Plaintiff is the source of, or otherwise endorses, Defendants' goods.

48.     Defendants have been marketing and offering their goods in connection with the Infringing Mark in the United States and in the state of Florida.

49.     None of Defendants' goods offered under the Infringing Mark are authorized by or originate from Plaintiff.

50.     Likewise, Defendants do not have the right to use the right of publicity or the persona of Tío Simón.

51.     The fame and reputation of Tío Simón is such that when used in connection with the goods of the Infringing Mark, a connection with Tío Simón and his estate would be presumed.

52.     Further, there are no other well-known persons or companies who have the right to use or license the TIO SIMON mark without Plaintiff's permission.

53.     Thus, consumers of traditional Venezuelan food are likely to mistakenly believe that the Infringing Mark is associated or authorized by Plaintiff.

54.     This is especially true of Defendants' target consumers, comprised of purchasers of traditional Venezuelan food who immediately associate the Infringing Mark with Tío Simón, his estate, and Plaintiff's TIO SIMON mark.

55.     Further, consumers are aware that Plaintiff's TIO SIMON mark was previously licensed in connection with a variety of goods and services, including board games, song books and coffee.

56.     Tío Simón himself also endorsed a variety of goods and services.

57.     Accordingly, consumers would presume that Defendants are endorsed or otherwise connected with Tío Simón, his estate, and Plaintiff's TIO SIMON mark.

58.     Plaintiff sent a cease-and-desist letter to Defendants on March 22, 2022.

59.     Plaintiff further opposed registration of Defendants' Application Serial No. 97/030,729 in front of the Trademark Trial and Appeal Board (Opposition No. 91282101).

60.     Despite being put on notice of Plaintiff's intellectual property rights, Defendants have refused to cease any of their infringing and unlawful activity.

### FIRST CAUSE OF ACTION

**(Trademark Infringement Under Common Law)**

61.     Defendants' unauthorized use of the TIO SIMON mark is likely to cause confusion, to cause mistake, and to deceive people into believing that Defendants' goods and services are authorized by, related to, or associated with Plaintiff. Therefore, Defendants' unauthorized use of the TIO SIMON mark constitutes infringement of Plaintiff's common law rights in the TIO SIMON mark.

62.     Plaintiff has priority to the TIO SIMON mark by virtue of its prior use of the TIO SIMON mark in the United States.

63.     Alternatively, Plaintiff has priority to the TIO SIMON mark by virtue of the well-known marks doctrine.

64.     Indeed, Plaintiff's TIO SIMON mark was well known in the United States among Defendants' target consumers such that Defendants' infringing use of the TIO SIMON mark is likely to cause confusion among a substantial number of persons.

65.     By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

66.     Defendants' wrongful acts aforementioned are willful, wanton, and in utter disregard of Plaintiff's rights.

67.     Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such infringing activities are allowed to continue. Plaintiff is thus entitled to both preliminary and permanent injunctive relief.

**SECOND CAUSE OF ACTION**

**(Infringement of Unregistered Marks Pursuant to Section 43(a)(1)(A) of the Lanham Act)**

68.     Defendants' unauthorized use of the TIO SIMON mark is likely to cause confusion, to cause mistake, and to deceive people into believing that Defendants' goods and services are authorized by, related to, or associated with Plaintiff. Therefore, Defendants' unauthorized use of the TIO SIMON mark constitutes infringement of Plaintiff's TIO SIMON mark.

69.     Plaintiff has priority to the TIO SIMON mark by virtue of its prior use of the TIO SIMON mark in the United States.

70.     Alternatively, Plaintiff has priority to the TIO SIMON mark by virtue of the well-known marks doctrine.

71.     Indeed, Plaintiff's TIO SIMON mark was well known in the United States among Defendants' target consumers such that Defendants' infringing use of the TIO SIMON mark is likely to cause confusion among a substantial number of persons.

72.     By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

73.     Defendants' wrongful acts aforementioned are willful, wanton, and in utter disregard of Plaintiff's rights.

74.     Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such infringing activities are allowed to continue. Plaintiff is thus entitled to both preliminary and permanent injunctive relief.

## THIRD CAUSE OF ACTION

### (False Association Pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

75.     Tío Simón is famous in the United States and internationally, especially amongst Venezuelans, the target demographic of Defendants.

76.     The Infringing Mark is identical to the name Tío Simón and Plaintiff's TIO SIMON mark.

77.      Defendants' logo further depicts Tío Simón's likeness in a deliberate attempt to create confusion because consumers in the United States will assume that Defendants' products are affiliated with, sponsored by, or endorsed by Tío Simón and his estate

12

78.     Moreover, Defendants use the Infringing Mark in connection with Venezuelan food products and market such products to consumers that would know and recognize Tío Simón.

79.     Defendants intend to profit from consumers' confusion and to capitalize on the goodwill generated by the fame of Tío Simón and Plaintiff's TIO SIMON mark.

80.     It is unlikely that any consumer would engage in a thorough investigation to uncover the true source of Defendants' products.

81.     The foregoing acts of Defendants constitute a willful violation of Section 43(a).

82.     Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such activities are allowed to continue.

### FOURTH CAUSE OF ACTION

**(Florida Deceptive and Unfair Trade Practices Act Pursuant to Fla. Stat. § 501.201, *et seq*.)**

83.     Defendants' use of the Infringing Mark and its logo depicting Tío Simón's likeness are likely to cause consumers to believe that Defendants' goods emanate from or are associated with Plaintiff.

84.     Defendants' actions affect the public's interest by deceiving and misleading the public into believing that Defendants and their goods are in some way sponsored, affiliated, or associated with Plaintiff, when in fact they are not.

85.     Additionally, Defendants' actions are capable of repetition and have been repeated through numerous sales to consumers.

86.     Defendants' actions are willful and wanton and Defendants knew or should have known that their conduct was unfair and deceptive and in violation of the Florida Deceptive and Unfair Trade Practices Act.

87.     Plaintiff has suffered irreparable harm and damages as a result of the Defendants acts in an amount thus far not determined.

88.     Defendants' unfair and deceptive acts violate the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201 *et seq.*

## FIFTH CAUSE OF ACTION

### (Fraud)

89.     Application Serial No. 97/030,729 was filed fraudulently.

90.     As Defendants were well aware, they were not using the Infringing Mark in the United States at the time of filing Application Serial No. 97/030,729 in connection with all the goods of the application.

91.     Likewise, Defendants were well aware that they are not the owner of the TIO SIMON Mark.

92.     Nonetheless, Defendant Miami Fine Foods filed Application Serial No. 97/030,729 with the intent to fraudulently obtain a registration to which it is not entitled.

93.     As of September 18, 2021, shortly after Application Serial No. 97/030,729 was filed, a review of the Wayback Machine, a digital archive of the world wide web, reveals no use of the Infringing Mark in connection with *Bakery desserts, bollitos,* and *pandebono.*

94.     On September 16, 2021, counsel for Defendant Miami Fine Foods, Ivania Oberti, executed a declaration in support of Application Serial No. 97/030,729 which stated, inter alia, that (i) "[t]he signatory believes that the applicant is the owner of the trademark/service mark sought to be registered", (ii) "[t]he mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application",

14

and (iii) "[t]o the best of signatory's knowledge and belief, the facts recited in the application are accurate."

95.     Ivania Oberti further declared that "the mark was first used by the applicant or the applicant's related company or licensee predecessor in interest at least as early as 09/01/2016, and first used in commerce at least as early as 09/01/2016, and is now in use in such commerce" in connection with "Cheese; Ready-to-eat meals comprised primarily of meats, cheese and also including Latin and Venezuelan food, namely, cheese tequenos, nata, milk cream, cachapas, sweet corn-based foods, bollitos, empanadas, cachitos, and pandebono" in international class 29 and "Sauces; Bakery desserts; Green, Guasacaca, Pink, Garlic and Cilantro sauce" in international class 30.

96.     Ivania Oberti stated that "the allegations and factual contentions made above have evidentiary support."

97.     Ivania Oberti, executed the declaration, despite being warned that false statements were punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements could jeopardize the validity of the application or any resulting registration.

98.     Defendant Miami Fine Foods was aware of Plaintiff's prior rights in the TIO SIMON mark due to the fame and popularity of Tío Simón. As such, Defendant Miami Fine Foods did not and could not have an honest and good faith belief that it was the owner of the Infringing Mark at the time it executed the declaration in support of its application.

99.     Defendant Miami Fine Foods's signatory, Ivania Oberti, executed the declaration in support of Application Serial No. 97/030,729 on September 16, 2021, when she knew that Defendant Miami Fine Foods was not the owner of the Infringing Mark and had no right to use the Infringing Mark.

15

100.     Ivania Oberti further executed the declaration in support of Application Serial No. 97/030,729 on September 16, 2021, when she and Defendant Miami Fine Foods knew that the Infringing Mark had not been used and was still not in use in United States commerce in connection with *Bakery desserts, bollitos,* and *pandebono* at the time of filing.

101.     Said false statements in the declaration submitted in support of Application Serial No. 97/030,729 were made by Ivania Oberti on behalf of Defendant Miami Fine Foods with the intent to induce the United States Patent and Trademark Office ("USPTO") to issue a trademark registration to which Defendant Miami Fine Foods is not entitled.

102.     Reasonably relying upon the truth of said false statements, the USPTO did, in fact, approve Application Serial No. 97/030,729 for publication and published Application Serial No. 97/030,729 for opposition on August 2, 2022.

103.     Said false statements were material in that the USPTO would not have approved Application Serial No. 97/030,729 for publication in the absence of Defendant Miami Fine Foods' false statements regarding the ownership and use of the Infringing Mark.

104.     Defendants submitted the fraudulent declaration to the USPTO with the intent to deceive the USPTO and induce it into registering the mark of Application Serial No. 97/030,729.

105.     Accordingly, submissions made to the USPTO by Defendants were fraudulent.

106.     Moreover, Defendants' Application Serial No. 97/030,729 has been cited as a basis for refusal of Plaintiff's Application Serial No. 97/296,359 for TIO SIMON.

107.     Defendants' fraudulent misrepresentations were malicious, wanton, willful, oppressive, and exhibited a reckless indifference to the rights of Plaintiff.

108.     Plaintiff is also entitled to damages in an amount to be determined at trial.

16

109.     Plaintiff is also entitled to punitive damages and restitution because of Defendants'
fraud and willful misrepresentations.

## SIXTH CAUSE OF ACTION

### (Right of Publicity Pursuant to Fla. Stat. Ann. § 540.08)

110.     Defendants' unauthorized use of the Infringing Mark to promote its goods and
services violates Tío Simón's right of publicity, which rights were passed to Plaintiff upon his
death.

111.     The Infringing Mark is identical to Tío Simón's name.

112.     Neither Plaintiff, Tío Simón, or any other individual has authorized or consented to
Defendants' use of the Infringing Mark or the name Tío Simón.

113.     Defendants' use of a logo depicting a man riding a donkey and wearing a traditional
Venezuelan hat passes off on the well-known representation of Tío Simón within the Venezuelan
community, as he is regularly portrayed wearing a traditional Venezuelan hat and riding on a
donkey or horse.

114.     Neither Plaintiff, Tío Simón, or any other individual has authorized or consented to
Defendants' use of Tío Simón's likeness.

115.     Such unauthorized use of Tío Simón's likeness constitutes a violation of his rights
of publicity, and such rights were passed to Plaintiff upon his death.

116.     Plaintiff has no adequate remedy at law and is presently suffering and will continue
to suffer irreparable harm and damage to its business reputation and goodwill if such activities are
allowed to continue.

## SEVENTH CAUSE OF ACTION

### (Right of Publicity Under Florida Common Law)

117.    Defendants unauthorized use of the Infringing Mark to promote its goods and services violates Tío Simón's rights of publicity, which rights were passed to Plaintiff upon his death.

118.    The Infringing Mark is identical to Tío Simón's name.

119.    Neither Plaintiff, Tío Simón, or any other individual has authorized or consented to Defendants' use of the Infringing Mark or the name Tío Simón.

120.    Defendants' use of a logo depicting a man riding a donkey and wearing a traditional Venezuelan hat passes off on the well-known representation of Tío Simón within the Venezuelan community, as he is regularly portrayed wearing a traditional Venezuelan hat and riding on a donkey or horse.

121.    Neither Plaintiff, Tío Simón, or any other individual has authorized or consented to Defendants' use of Tío Simón's likeness.

122.    Such unauthorized use of Tío Simón's likeness constitutes a violation of his rights of publicity, and such rights were passed to Plaintiff upon his death.

123.    Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such activities are allowed to continue.

## **EIGHTH CAUSE OF ACTION**

### **(False Endorsement Pursuant to 15 U.S.C. § 1125(a))**

124.    As described above, Plaintiff is the legal owner of all rights to Tio Simon's name and likeness, the TIO SIMON mark, and associated rights of publicity.

125.    Defendants have, without authorization and for their own commercial purposes, used Tio Simon's name and likeness and the TIO SIMON mark in connection with the promotion and offering for sale of their products.

126.    Defendants' unauthorized use of Tio Simon's name and likeness, and the TIO SIMON mark, is likely to cause confusion among consumers regarding Plaintiff's endorsement of Defendants' products, and lead consumers to believe that Plaintiff endorses or has authorized Defendants' products, when it has not.

127.    Such confusion, caused by Defendants' unauthorized use of Tio Simon's name and likeness, and the TIO SIMON mark, has caused, and will continue to cause, competitive harm to Plaintiff.

128.    Upon information and belief, Defendants' actions are willful, and Defendants are acting with actual malice, and in bad faith.

129.    By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

130.    Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such activities are allowed to continue.

## **NINTH CAUSE OF ACTION**

### **(Unfair Competition Pursuant to 15 U.S.C. § 1125(a))**

131.    Defendants' unauthorized use of the Infringing Mark is likely to cause confusion, to cause mistake, and to deceive consumers into believing that Defendants' goods and services are authorized by, related to, or associated with Plaintiff. Therefore, Defendants' unauthorized use of the Infringing Mark constitutes unfair trade practices, inequitable conduct, and unfair competition.

132.    Defendants' use of the Infringing Mark is identical to Tío Simón and Plaintiff's TIO SIMON mark, coupled with the use of a logo depicting Tío Simón's likeness, is a deliberate attempt to create confusion amongst consumers who will assume that Defendants' products are affiliated with, authorized by, or endorsed by Plaintiff.

133.    Moreover, Defendants use the Infringing Mark in connection with Venezuelan food products and target consumers who would know and recognize Tío Simón. Upon information and belief, Defendants intend to profit from consumers' confusion and to capitalize on the goodwill generated by the legacy of Tío Simón and Plaintiff's TIO SIMON mark.

134.    It is unlikely that any consumers would engage in a thorough investigation to uncover the true source of Defendants' products.

135.    By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

136.    Defendants' wrongful acts aforementioned are willful, wanton, and in utter disregard of Plaintiff's rights.

137.    Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such infringing activities are allowed to continue.

## TENTH CAUSE OF ACTION

### (Unfair Competition Under Florida Common Law)

138.    Defendants' unauthorized use of the Infringing Mark is likely to cause confusion, to cause mistake, and to deceive consumers into believing that Defendants' goods and services are authorized by, related to, or associated with Plaintiff. Therefore, Defendants' unauthorized use of the Infringing Mark constitutes unfair trade practices, inequitable conduct, and unfair competition.

139.    Defendants' use of the Infringing Mark is identical to Tío Simón and Plaintiff's TIO SIMON mark,  coupled with the use of a logo depicting Tío Simón's likeness, is a deliberate attempt to create confusion amongst consumers who will assume that Defendants' products are affiliated with, authorized by, or endorsed by Plaintiff.

140.    Moreover, Defendants use the Infringing Mark in connection with Venezuelan food products and target consumers who would know and recognize Tío Simón.

141.    Upon information and belief, Defendants intend to profit from consumers' confusion and to capitalize on the goodwill generated by the legacy of Tío Simón and Plaintiff's TIO SIMON mark.

142.    It is unlikely that any consumers would engage in a thorough investigation to uncover the true source of Defendants' products.

143.    By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

144.    Defendants' wrongful acts aforementioned are willful, wanton, and in utter disregard of Plaintiff's rights.

145.    Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such infringing activities are allowed to continue.

## ELEVENTH CAUSE OF ACTION

### (Trademark Dilution Pursuant to 15 U.S.C. § 1125(c))

146.    Plaintiff, not Defendants, is the rightful owner of the TIO SIMON mark.

147.     Defendants' trademark Application Serial No. 97/030,729 was filed with the intent to trade off on the reputation and goodwill of Tío Simón, his estate, and Plaintiff's TIO SIMON mark.

148.     Plaintiff's TIO SIMON mark was famous well before Defendants first use of the Infringing Mark.

149.     Defendants' unauthorized use of the Infringing Mark will dilute the distinctive qualities of Plaintiff's famous TIO SIMON mark within the meaning of Section 43(c) of the U.S. Trademark Act, 15 U.S.C. § 1125(c), and will lessen the ability of Plaintiff to distinguish Defendants' goods from its own.

150.     By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

151.     Defendants' wrongful acts aforementioned are willful, wanton, and in utter disregard of Plaintiff's rights. Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such infringing activities are allowed to continue.

## TWELFTH CAUSE OF ACTION

### (Trademark Dilution Pursuant to Fla. Stat. Ann. § 495.151)

152.     Plaintiff's TIO SIMON mark is distinctive, and widely recognized by the general consuming public of the United States as a designation of source of Plaintiff's goods and services.

153.     Defendants' unauthorized use of the Infringing Mark is likely to cause dilution of Plaintiff's TIO SIMON mark.

154.     By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

22

155.     Defendants' wrongful acts aforementioned are willful, wanton, and in utter disregard of Plaintiff's rights.

156.     Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such infringing activities are allowed to continue.

## THIRTEENTH CAUSE OF ACTION

### (False Suggestion of a Connection Pursuant to 15 U.S.C. § 1052)

157.     Upon information and belief, Defendants were and are well aware of Tío Simón, and intentionally use and sought registration of the Infringing Mark in an attempt to falsely suggest a connection to the public between Defendants and Tío Simón.

158.     Defendants' are using the Infringing Mark with the intent to pass off its goods and services as those of Plaintiff by misrepresenting that Tío Simón and his estate are the source of, or otherwise endorsing, the Defendants' goods.

159.     The Infringing Mark is identical to the name Tío Simón and Plaintiff's TIO SIMON mark.

160.     In light of Tío Simón's fame in the United States and internationally, consumers in the United States and globally have come to recognize that the TIO SIMON mark points uniquely and unmistakably to Tío Simón and his estate

161.     Defendants actively promote the Infringing Mark as being associated with Tío Simón and Plaintiff's TIO SIMON mark.

162.     The goods offered in connection with the Infringing Mark include traditional Venezuelan food and recipes which consumers instantly recognize as originating from Venezuelan culture, of which, Tío Simón stands as a cultural icon.

163.    Further, Defendants' website, https://www.tiosimonfoods.com, contains the Infringing Mark and advertises goods sold under the Infringing Mark as being traditional Venezuelan foods.

164.    Neither Defendants, nor Defendants' goods offered under the Infringing Mark are authorized by Plaintiff, the rightful owner of the TIO SIMON mark and rights.

165.    The fame and reputation of Tío Simón is such that when used with the goods of the Infringing Mark, a connection with Tío Simón and Plaintiffs would be presumed.

166.    Moreover, Defendants also use a logo comprised of a drawing of a man riding a donkey and wearing a traditional Venezuelan hat which is confusingly similar with the well-known representation of Tío Simón within the Venezuelan community, as he is regularly portrayed wearing a traditional Venezuelan hat and riding on a donkey or horse.

167.    Such marketing is intended to draw a false connection between the Infringing Mark and Tío Simón and misrepresent that Tío Simón and his estate are the source of, or otherwise endorsing, Defendants' goods.

168.    Defendants' Application Serial No. 97/030,729 for the Infringing Mark was filed with the intent to trade off the reputation and goodwill of Tío Simón, his estate, and Plaintiff's TIO SIMON mark.

169.    It is unlikely that any consumer would engage in a thorough investigation to uncover the true source of Defendants' products.

170.    Thus, consumers are likely to mistakenly believe that the Infringing Mark is associated with, authorized by, or otherwise endorsed by Tío Simón and his estate.

171.    Defendants' use and registration of the Infringing Mark will cause irreparable harm, injury and damage to Plaintiff in that it will result in confusion among consumers regarding the origin or sponsorship of Defendants' goods, causing actual and reputational harm to Plaintiff.

172.    Defendants' use of the Infringing Mark, the logo depicting Tío Simón's likeness, and the domain name www.tiosimonfoods.com to market its Venezuelan food products, falsely suggests a connection with Plaintiff in violation of Section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a).

173.    Accordingly, registration of Application Serial No. 97/030,729 must be refused.

174.    Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such activities are allowed to continue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.  A judgment and declaration that Defendants have infringed Plaintiff's TIO SIMON mark; falsely suggested a connection under 15 U.S.C. § 1052; engaged in false association under 15 U.S.C. § 1125(a); violated Florida's Deceptive and Unfair Trade Practices Act under Fla. Stat. Ann. § 501.201; committed fraud; violated Plaintiff's right of publicity under Fla. Stat. Ann. § 540.08 and Florida common law; engaged in unfair competition under 15 U.S.C. § 1125(a) and Florida common law; are liable for trademark dilution under 15 U.S.C. § 1125(c) and Fla. Stat. Ann. § 495.151; and are liable for Lanham Act false endorsement;

B.  A permanent injunction enjoining and restraining Defendants, their officers, agents, servants, employees, assigns, attorneys, and those in active concert or participation

therewith, from infringing, in any manner, Plaintiff's TIO SIMON mark; from using the name, likeness, or persona of Tío Simón; from engaging in acts of unfair competition against Plaintiff; and from engaging in activity that is likely to cause dilution of Plaintiff's TIO SIMON mark;

C.  An accounting to Plaintiff for all sales, receipts, assets, profits or other gains derived directly or indirectly from Defendants' unlawful activity;

D.  The transfer to Plaintiff of the domain https://www.tiosimonfoods.com/, and any other similar domain owned by Defendants;

E.  An order refusing registration of Application Serial No. 97/030,729;

F.  An award of such damages as Plaintiff has sustained, is sustaining, or will sustain by reason of Defendants' unlawful activity;

G.  An award of punitive and exemplary damages in an amount to be determined;

H.  An award of treble damages and an award of Defendants' profits under 15 U.S.C. § 1117;

I.  An award of attorneys' fees under 15 U.S.C. § 1117 and related nontaxable expenses;

J.  An award of pre- and post-judgment interest;

K.  Taxable costs under 28 U.S.C. § 1920; and

L.  Other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.


Dated: October 13, 2023

By: /s/Matthew Ryan/
Matthew Ryan
Fla. Bar No. 368709
**HAUG PARTNERS LLP**
777 South Flagler Drive
Suite 1000, East Tower

West Palm Beach, FL 33401
Tel: (212) 588-0800
mryan@haugpartners.com
Ben Natter (*Pro Hac Vice* Forthcoming)
Michael Barer (*Pro Hac Vice* Forthcoming)
**HAUG PARTNERS LLP**
745 Fifth Avenue, 10th Floor
New York, NY 10151
Tel: (212) 588-0800
bnatter@haugpartners.com
mbarer@haugpartners.com

*Attorneys for Plaintiff*
*Sucesión Simon Diaz Marquez*